## S. G. DeCOURSEY v. ELIZABETH JOHNSTON.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 3 OF PHILADELPHIA COUNTY.

Argued April 2, 1890—Decided April 21, 1890.

1. Where a husband and wife joined in the assignment of a policy upon the life of the husband for the benefit of the wife, and the assignee transferred the policy to another and died, in a feigned issue between the second assignee and the widow of the assured, to determine the ownership of the proceeds, the widow is incompetent to testify as to matters occurring before the death of the first assignee: § 5 (e), act of May 23, 1887, P. L. 159.

2. Where the assignment of such policy was made as collateral security for the husband's note, and provided for the public or private sale of the policy and the application of the proceeds " to the payment of this note and all necessary expenses and charges," the expenses and charges contemplated were those incident to the sale of the collateral, and would not include a counsel fee for the trial of the feigned issue.

Before STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

No. 193 January Term 1890, Sup. Ct.; court below, No. 193 March Term 1885, C. P. No. 3.

On June 16, 1885, a feigned issue was ordered wherein Samuel G. DeCoursey was plaintiff and Elizabeth Johnston was defendant, to determine whether the plaintiff or the defendant was entitled to the proceeds of a policy of insurance, dated May 4, 1865, for $5,000, issued by the Connecticut Mut-

ual Life Insurance Co. upon the life of John Johnston, the defendant's husband, payable "to his wife, and, should she not then be living, to her children," and assigned by John Johnston and the defendant, and her children, by their guardian, to James W. Boyd, on November 11, 1874, and by James W. Boyd to Samuel G. DeCoursey, the plaintiff, on November 19, 1874.

At the trial on October 29, 1889, the plaintiff put in evidence the policy and the several assignments thereof, and showed that James W. Boyd had died "three or four years ago," and that plaintiff had received the assignment of the policy, and of a bond and mortgage upon property recited as the property of Elizabeth Johnston, as security to protect a note made by John Johnston to James W. Boyd, dated October 17, 1874, indorsed by the latter, which note is copied in full in the opinion of the Supreme Court.

The plaintiff then rested, whereupon Elizabeth Johnston, the defendant, was called, as a witness in her own behalf, to prove that James W. Boyd, in making the assignments in evidence to the plaintiff, was acting merely as the plaintiff's agent, and that when the witness executed the assignment of the policy she was under duress of her husband.

Objected to, because James W. Boyd was dead, and the witness being one of the parties to the record was incompetent to testify.

By the court: Objection sustained; exceptions.[1][2][3]

The witness testified: I knew Boyd in his lifetime. He is dead. I know Mr. DeCoursey. I have had no conversation with him since Mr. Boyd's death, but since my husband's death.

Q. Have you had any conversation with Mr. DeCoursey since the bringing of this suit?

Objected to, unless after Mr. Boyd's death.

By the court: Objection sustained, unless conversation occurred since Boyd's death; exception.[4]

The defendant having called the plaintiff, as if on cross-examination, the plaintiff testified as to an interview with Mr. and Mrs. Johnston, when they came to see him about the note he held. The defendant was then recalled, and it was proposed "to examine herself to contradict plaintiff as to her statement on cross-examination, that Mr. and Mrs. Johnston called on him together."

Opinion of the Court.

Objected to.

By the court: Objection sustained; exception.[5]

The defendant having closed, " plaintiff claims counsel fee under the stipulations of note of John Johnston in evidence. It is agreed by counsel, that if the court should be of opinion that plaintiff is entitled to counsel fee, the amount thereof should be fixed by the court."

The court, GORDON, J., charged the jury: " There is practically no defence in this case, and the jury must find for the plaintiff for the amount of the note of John Johnston, deceased, and interest, less credits, together with a reasonable counsel fee, which I fix at $150." [6] [7]

—The jury returned a verdict for the plaintiff for $5,161.20. Judgment having been entered, the defendant took this appeal, specifying that the court erred:

1–3. In refusing the defendant's offers. [1 to 3]

4. " In sustaining the objection of appellee (plaintiff below) to the following question propounded to appellant (defendant below):

" ' Have you had any conversation with Mr. DeCoursey since the bringing of this suit? ' " [4]

5. " In rejecting the offer of appellant (defendant below) to contradict the plaintiff's (appellee's) assertion that appellant (defendant) and appellant's (defendant's) husband had together called on plaintiff (appellee)." [5] [*]

6, 7. In the instruction to the jury quoted. [6] [7]

*Mr. Henry C. Terry* (with him *Mr. Owen B. Jenkins*), for the appellant.

Upon the competency of the defendant as a witness, counsel cited: Act of May 23, 1887, P. L. 158; Amer. Life Ins. T. Co. v. Shultz, 82 Pa. 46. That counsel fees were not payable: Daly v. Maitland, 88 Pa. 384; Terry v. Drabenstadt, 68 Pa. 400; Haverstick v. Gas Co., 29 Pa. 254.

*Mr. George Junkin*, for the appellee.

OPINION, MR. JUSTICE STERRETT:

This feigned issue was framed for the purpose of determining

---

\* Why not designate the parties to the cause in the Supreme Court, all through, by their designation in the court below?

whether the plaintiff, Samuel G. DeCoursey, was entitled to all or any part of the $5,000 paid into court by the Connecticut Mutual Life Insurance Company, as the amount admitted to be due under its policy of insurance on the life of defendant's husband, John Johnston, then deceased. By the terms of the policy, the sum named was payable upon the death of the insured " to his wife, and, should she not then be living, to her children." Johnston died in November, 1884; and, the insurance money being claimed by his widow as beneficiary named in the policy, and also by Samuel G. DeCoursey as assignee of the policy, the company paid the money into court, and the issue was ordered to determine the rights of the respective claimants.

To maintain the issue on his part, the plaintiff gave in evidence a note, of which the following is a copy:

" $3,200.                           Philadelphia, Oct. 17, 1874.

" One year after date, I promise to pay to the order of James W. Boyd thirty-two hundred dollars, without defalcation, for value received, having deposited herewith. . . . . an assignment from me, my wife and children, of policy No. 45,459, of the Connecticut Mutual Life Insurance Company of Hartford, insuring $5,000 on my life in favor of my wife and children, all of which I hereby authorize the holder of this note, upon the non-performance of this promise at maturity, to sell either at the broker's board, or at public or private sale, without demanding payment of this note or the debt due thereon, and without further notice, and apply proceeds, or so much thereof as may be necessary, to the payment of this note, and all necessary expenses and charges, holding myself responsible for any deficiency. And I hereby further authorize the said holder, at any sale of said securities, to buy the same himself, with the same right as a stranger.              JOHN JOHNSTON."

Accompanying this note was an absolute assignment of the policy by Johnston, and his wife and her children, to Boyd, the payee of the note, coupled with an irrevocable power of attorney to collect the insurance money when due, etc. In November of the same year the note was transferred to plaintiff in the issue by Boyd, the payee, who at the same time, for value received, assigned to said plaintiff the policy of insurance. On behalf of the plaintiff, evidence was also introduced to show,

inter alia, that about the time the note matured, or shortly thereafter, the maker failed, and made an assignment for the benefit of his creditors, among whom were Boyd and DeCoursey, both of whom proved their respective claims against the assigned estate, and received their dividends thereon. The verdict, in favor of the plaintiff, was "that the property in the fund in question is in the plaintiff to the amount of $5,161.20;" and judgment was entered thereon. That sum was the amount of the note, with interest, less the credits proved by the testimony of the plaintiff, to which was added, by direction of the court, a counsel fee of $150, making in all $5,161.20.

The subject of complaint in the first to the fourth specifications is the refusal of the court to permit the defendant to testify to matters that occurred in the lifetime of Mr. Boyd, to whom she assigned the policy. She proposed to prove by her own testimony that he was merely the agent of plaintiff in procuring the assignment, and also that she executed it under duress by her husband. Before Mrs. Johnston was offered as a witness, the note, assignments of the policy, etc., had been given in evidence. From these and other testimony it appeared that the policy in question was assigned by herself and others to Boyd absolutely, and that more than a month afterwards he assigned it to the plaintiff. There was nothing on the face of the papers to indicate that Boyd, who was then dead, was merely the agent of plaintiff in procuring the assignment. On the contrary, he appeared to be a principal in the transaction, and there was nothing to rebut that legal inference. "When any party to a thing or contract in action is dead, . . . . and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject-matter in controversy," the act of 1887 excludes a party from testifying " to any matter occurring before the death of said party." Having assigned her policy to Boyd, who assigned the same to plaintiff in this issue, Mrs. Johnston was incompetent to prove any matter occurring before the death of her assignee, and was therefore rightly excluded. Amer. Life Ins. T. Co. v. Shultz, 82 Pa. 46, cited and relied on by the defendant, is not applicable to the facts of this case. In that case, the deceased person, Mr. Geiger, was not a party to the contract, nor to the proceeding. He was merely the agent of the insurance company.

Opinion of the Court.

The fourth specification is misleading in that it misrepresents the objection to the question and the ruling of the court thereon. The bill of exceptions, p. 17, shows that the objection was restricted to conversation in the lifetime of Mr. Boyd, and the ruling of the court was "sustained, unless conversation occurred since Boyd's death." A proper observance of the Rules of Court in regard to assignments of error, would relieve us from the necessity of noticing such misleading inaccuracies.

There was no error in rejecting the offer referred to in the fifth specification. The witness whose " assertion " the defendant proposed to contradict was called by herself, and made the " assertion " in his examination in chief as well as on cross-examination. Moreover, she was incompetent, as we have seen, to prove anything that occurred in the lifetime of Mr. Boyd. The " assertion " that defendant proposed to contradict evidently related to what must have occurred anterior to the death of Mr. Boyd.

With the exception of what the learned judge said as to " a reasonable counsel fee," there was no error in the instruction referred to in the sixth specification. We find nothing in the evidence to warrant the instruction complained of in the seventh specification. It is true the contract of hypothecation provides for the public or private sale of the insurance policy, etc., pledged as collateral, and the application of the proceeds "to payment of this note, and all necessary expenses and charges ;" but the power of sale thus given was not exercised, and hence no such expenses and charges as were contemplated by the parties were incurred. Moreover, counsel fees are allowable, in this state, to the attorney of the opposite party, only when expressly stipulated for. The jury doubtless obeyed the instructions of the court, and included the $150 counsel fee in their verdict. The error may be corrected by deducting that amount as of the date of the verdict, and thus making the correct sum, $5,011.20. With that correction,

The judgment is affirmed.